**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 23, 2020[*]
Decided July 23, 2020

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-2693

| | |
|---|---|
| LONNIE L. JACKSON | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 17-C-0627 |
| | |
| RYAN KUEPPER, et al., | Lynn Adelman, |
| *Defendants-Appellees*. | *Judge*. |

## O R D E R

Despite having unlimited clean drinking water in her cell, Lonnie Jackson, a Wisconsin inmate, drank unclean water from the melted ice in a medical bag intended only for topical use to treat her sore back. She appeals the entry of summary judgment against her on claims that prison officials violated the Eighth Amendment by giving her that ice. *See* 42 U.S.C. § 1983. Because no jury could reasonably conclude that any defendant recklessly ignored a serious risk to Jackson's health, we affirm the judgment.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Jackson was housed at the Oshkosh Correctional Institution in April 2015 in a cell with a cup and a sink that dispensed drinkable water. She received her prescribed medications, including an ice bag to treat a lower back injury, from a correctional officer each day. (Though Oshkosh is an all-male prison, Jackson is a transgender woman, so we refer to her with feminine pronouns.) As Jackson knew, inmates may not consume the ice placed in a medical bag. Officers often put salt or pepper in the medical ice bags to prevent inmates from eating from it. Jackson knew that eating the medical ice could result in losing her prescription for it. Nonetheless, she saw "no problem" with drinking the leftover water after the ice melts.

Officer Ryan Kuepper was responsible for the medical rounds one evening when Jackson asked for her medical ice. Kuepper had recently transferred from an Arizona prison, where he says it was "common practice to put soap in the medical ice bags to prevent inmates from abusing the medical ice privilege by drinking it." He had never before given medical ice to an inmate at Oshkosh. He filled Jackson's medical bag with ice and "out of habit" put one pump of liquid hand-soap into the bag, shook it, and gave it to Jackson. He did not tell her that he had put soap in the bag.

That night, Jackson woke up, and wanted some water. Rather than filling her cup from the sink, she poured the melted ice from the bag and drank three full cups of it. Thirty minutes later, she began vomiting and realized that soap was in the water. The next morning, she went to the prison's health services unit. After consulting poison-control experts, the medical staff advised Jackson that the consumed soap needed to pass through her digestive system and that its passage would have no effect on her medications nor cause any long-term damage. For the next week, Jackson experienced various bouts of diarrhea, vomiting, light-headedness, stomach cramping, and nausea. She never requested follow-up medical treatment.

As relevant to this appeal, Jackson sued Kuepper and other officials, alleging that they violated her rights under the Eighth Amendment by deliberately ignoring the serious medical risk of putting soap in her ice bag. *See* 42 U.S.C. § 1983. The district court entered summary judgment for the defendants. It concluded that no reasonable juror could find that (1) Jackson suffered a serious risk of harm from consuming the contents of the bag; (2) the defendants knew that she would consume the contents; or (3) they knew that doing so would severely endanger her.

On appeal, Jackson contends that summary judgment was improper because the record suggests that Kuepper deliberately ignored a serious risk to her health. We

review the entry of summary judgment de novo, construing the record and drawing all inferences in Jackson's favor. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (en banc). To get past summary judgment, Jackson had to present evidence that she suffered a substantial risk of serious medical harm, and that the defendants knew of, and deliberately disregarded, that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

We will assume, as Jackson argues, that consuming ice from a bag into which liquid soap has been placed poses a substantial risk of serious harm; even so, Jackson must lose. The record does not contain evidence from which a jury could reasonably find that Kuepper deliberately ignored a risk that Jackson would consume the soapy ice. Kuepper knew that inmates are forbidden from consuming ice in a medical bag (a policy that Jackson admits knowing), and he knew that Jackson had in her cell full access to drinking water. Thus, Kuepper did not have reason to think that Jackson faced a substantial risk of drinking soapy water from a medical bag. Moreover, even if Kuepper did suspect that Jackson might consume some ice (the soap, after all, was intended to deter inmates from ingesting any of it), Jackson would still lose. For no evidence suggests that Kuepper thought that Jackson would drink *enough* soapy ice-water (three cups in Jackson's case) to become ill. Rather, it was reasonable for Kuepper to believe that the sudden soapy taste would deter Jackson from ingesting more than a swallow and that she would instead use her sink for more water.

Jackson next criticizes the district court's reliance on three aspects of Kuepper's testimony, which Jackson argues were false, but those aspects were immaterial and thus did not affect the outcome. First, she contends that the district court ignored evidence that Kuepper changed his story about where he got the soap (the staff bathroom or the staff breakroom). Second, she points to a fact dispute about whether Arizona's Department of Corrections had a policy, as Kuepper testified, of putting soap in the ice; she offers on appeal a statement from the Department that it had no such policy. Third, Jackson disputes that Kuepper had authority to add soap to the ice. But none of those facts was material to the outcome of summary judgment. Even if we accepted Jackson's favored version of these facts, the record would remain devoid of evidence that Kuepper knew that a pump of soap in a bag of ice would imperil Jackson, given that the ice was for topical use only and Jackson had unlimited access to potable water. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986).

Finally, Jackson challenges the district court's conclusion that the two other defendants (the warden and security director) were unaware of the soap incident. These defendants acknowledged that officers put salt and pepper into medical ice bags. From

this fact, Jackson concludes that they are responsible for any alteration of the contents of an inmate's medical ice bag. But liability under 42 U.S.C. § 1983 requires personal involvement, *see Mitchell v. Kallas*, 895 F.3d 492, 498–99 (7th Cir. 2018), and Jackson offers no evidence that these defendants knew that Kuepper would put soap in the ice, that Jackson would drink the melted ice rather than potable water, and that she would do so in a quantity that was harmful. Thus, summary judgment in their favor was proper.

We have considered Jackson's other arguments, and none has merit.

AFFIRMED